# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| STATE OF OKLAHOMA, ex rel., <br> MIKE HUNTER, ATTORNEY GENERAL OF <br> OKLAHOMA <br><br>     Plaintiff, <br><br> vs. <br><br> MCKESSON CORPORATION; <br> CARDINAL HEALTH, INC.; <br> CARDINAL HEALTH 105, INC.; <br> CARDINAL HEALTH 108, LLC; <br> CARDINAL HEALTH 110, LLC; <br> AMERISOURCEBERGEN CORP.; and <br> AMERISOURCEBERGEN DRUG CORP., <br><br>     Defendants. | Case No. ___CIV-20-90-C___ <br><br> (Removal from: Cleveland <br> County District Court, CJ- <br> 2020-39 TB) |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1442 and 1446, Defendant McKesson Corporation ("McKesson") hereby removes the above-captioned action from the District Court of Cleveland County, State of Oklahoma, to the United States District Court for the Western District of Oklahoma. As grounds for removal, McKesson states as follows:

## I.      NATURE OF THE REMOVED ACTION

1.     On January 13, 2020, Plaintiff the State of Oklahoma ("the State") filed *Oklahoma v. McKesson Corporation, et al.*, in the District Court of Cleveland County, State of Oklahoma. The case was assigned Case No. CJ-2020-39 TB.

2.     The Petition alleges, among other things, that McKesson failed to report and/or halt suspicious orders for prescription opioid medications, failed to prevent the diversion of prescription opioids, and distributed prescription opioids in excess of legitimate medical needs, thereby causing harm to the State and its citizens. *See* Pet. ¶ 79

("Defendants failed to report suspicious orders, prevent diversion, or otherwise control the supply of opioids flowing into communities across America . . . . [I]n disregard of their duties, Defendants continued to pump massive quantities of opioids into the Oklahoma supply chain despite their obligations to control the supply, prevent diversion, report and take steps to halt suspicious orders."); *id.* ¶ 103 ("The use of opioids by Oklahomans who were addicted or who did not have a medically appropriate purpose for using opioids could not have occurred without the actions of Defendants . . . . If Defendants had monitored supply and guarded against diversion as required by Oklahoma law, the State and its citizens would have avoided significant injury.").

3.     Critically, the allegations in the Petition put at issue *all* of McKesson's distributions of prescription opioids into the State of Oklahoma. This necessarily includes McKesson's distribution of pharmaceuticals to the U.S. Department of Veterans Affairs, Indian Health Services, Bureau of Prisons, State Veterans Homes, and other federal customers in Oklahoma pursuant to an exclusive federal contract called the Pharmaceutical Prime Vendor Contract ("PPV Contract").[1] Thus, the State's allegations encompass distributions McKesson made to federal customers under a federal contract and at the direction of a federal officer. *Id.* ¶¶ 83-85 ("From 2006-2012, there were over 1.4 billion opioid pills distributed in the State of Oklahoma. . . . Each Defendant knew, or should have known, that the amount of opioids that it allowed to flow into Oklahoma was far in excess of what could be consumed for medically necessary purposes in the relevant communities

---

[1] PPV Contract, *available at* https://www.va.gov/opal/docs/nac/ncs/ppvContractVA797P12D0001option3.pdf.

. . . ."); *id.* ¶ 92 ("The volume of opioids distributed in Oklahoma communities, including, but not limited to those described above, was so high as to raise a red flag that not all of the prescriptions being ordered could be for legitimate medical uses.").

4.      The State does not attempt to exclude McKesson's federal distributions (or any other particular chains of distribution) from the scope of its allegations concerning the purportedly improper volume of opioid distributions. Pet. ¶ 52 ("McKesson has no fewer than 18 separate distribution facilities located throughout the country that hold Oklahoma licenses as wholesale drug distribution facilities. On information and belief, McKesson has used some or all of those facilities to distribute opioids in the State of Oklahoma."); *Id.* ¶ 101 ("Defendants knew or should have known that a substantial amount of the opioids dispensed in and around the State of Oklahoma were being dispensed based on invalid or suspicious prescriptions. Yet, Defendants continued to oversupply.").

5.      For the foregoing reasons, and as set forth more fully below, the State's allegations against McKesson relate to and necessarily implicate McKesson's distribution of pharmaceuticals to federal customers (including the Veterans Affairs, Indian Health Services, Bureau of Prisons, and other federal facilities) under the requirements of a federal contract and under the direction of a federal officer. McKesson is without discretion to depart from the strictures of that federal contract. This action is therefore removable under the federal officer removal statute, 28 U.S.C. § 1442.

## II.      THIS CASE IS REMOVABLE UNDER THE FEDERAL OFFICER REMOVAL STATUTE.

6.      The federal officer removal statute authorizes "any person acting under" a federal officer to remove to federal court a civil action "for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1).

7.      The federal officer removal statute has long been "liberally construed" to favor removal and to protect defendants' rights to a federal forum when acting under federal officers' authority. *Colorado v. Symes*, 286 U.S. 510, 517 (1932). The Supreme Court has held that "the right of removal is *absolute* for conduct performed under color of federal office, and has insisted that the policy favoring removal should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)." *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981) (emphasis added) (citation and quotation omitted). There has therefore been "a clear command from both Congress and the Supreme Court that when federal officers and their agents are seeking a federal forum, [federal courts] are to interpret section 1442 broadly in favor of removal." *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006).

8.      In 2011, Congress amended the statute to permit the removal of any state suit "for *or relating to* any act under color of . . . [federal] office." 28 U.S.C. § 1442(a)(1) (emphasis added). In adding the phrase "relating to," Congress intended to further broaden the scope of acts giving rise to removal under the statute. *See* H.R. Rep. 112-17(I) at 6 (2011), reprinted in 2011 U.S.C.C.A.N. 420, 425 (explaining that amendment "is intended to broaden the universe of acts that enable Federal officers to remove to Federal court"); *see also Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) ("The ordinary

4

meaning of ['relating to'] is a broad one [meaning] 'to stand in some relation; to have some bearing or concern; to pertain; refer; to bring into association with.'" (citation omitted)).

9.     Federal officer removal requires a defendant to show "(1) that it acted under the direction of a federal officer; (2) that there is a causal nexus between the plaintiff's claims and the acts the private corporation performed under the federal officer's direction; and (3) that there is a colorable federal defense to the plaintiff's claims." *Greene v. Citigroup, Inc.*, 215 F.3d 1336, 2000 WL 647190, at *2 (10th Cir. 2000) (unpublished table decision).

**A.     This Action Is One of Many Opioid Actions, and One of Several That Implicate McKesson's Distributions at the Direction of a Federal Officer.**

10.     This action is one of more than 3,000 related lawsuits asserting claims arising out of the sale, marketing, and distribution of prescription opioids nationwide. More than 2,600 of these actions are currently pending before Judge Dan Aaron Polster in the federal multidistrict litigation ("MDL"). *See In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375 (J.P.M.L. 2017).[2]

11.     McKesson has removed other opioid cases from state to federal court on the basis that the complaints necessarily put at issue distributions under the PPV Contract. This includes cases brought by states, counties, cities, private hospitals, and Native American tribes—and notably, including Native American tribes that filed their lawsuits in Oklahoma

---

[2] *See also* Judicial Panel on Multidistrict Litigation, *MDL Statistics Report – Distribution of Pending MDL Dockets by Actions Pending* (Jan. 15, 2020), https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_Actions_Pending-January-15-2020.pdf.

state courts.[3] No federal court to which McKesson has removed a case on this ground has

remanded the case to state court.[4]

---

[3] To date, McKesson has removed eight cases filed by Native American tribes in Oklahoma state courts on federal officer grounds. *See Cherokee Nation v. McKesson Corp. et al.*, No. 6:18-cv-00056 (E.D. Okla.); *Osage Nation v. Purdue Pharma L.P. et al.*, No. 4:19-cv-00485 (N.D. Okla.); *Apache Tribe v. Purdue Pharma L.P. et al.*, No. 5:19-cv-01026 (N.D. Okla.); *Pawnee Nation v. Purdue Pharma L.P. et al.*, No. 4:19-cv-00556 (N.D. Okla.); *Delaware Nation v. Purdue Pharma, L.P. et al.*, No. 5:19-cv-00956 (W.D. Okla.); *Sac and Fox Nation v. Purdue Pharma, L.P. et al.*, No. 5:19-cv-00957 (W.D. Okla.); *Thlopthlocco Tribal Town v. Purdue Pharma, L.P. et al.*, No. 4:19-cv-00557 (N.D. Okla.); *Citizen Potawatomi Nation v. Purdue Pharma, L.P. et al.*, No. 5:19-cv-00955 (W.D. Okla.). As in this case, the plaintiffs in those actions levied allegations that put at issue distributions of prescription opioids that McKesson made to federal customers under the PPV Contract—specifically, Indian Health Services facilities. More recently, McKesson removed on federal officer grounds an action brought by the State of South Carolina, which contended—as the State of Oklahoma does in this case—that the aggregate volume of prescription opioids shipped by McKesson into the state was itself excessive and improper. *See South Carolina v. McKesson Corp. et al.*, No. 3:19-cv-02783 (D.S.C.). There, as here, the allegations in the complaint put at issue all prescription opioids shipped into the state, and thus necessarily implicated distributions that McKesson made under the PPV Contract at the direction of a federal officer.

[4] In total, McKesson has removed nearly thirty opioid cases on the ground that plaintiffs' allegations put at issue distributions made under the federal PPV Contract—*none* of which have been remanded to state court. *See, e.g.*, *Lac Courte Oreilles Band Of Lake Superior Chippewa Indians v. McKesson Corp. et al.*, No. 3:18-cv-00286 (W.D. Wisc.); *Red Cliff Band of Lake Superior Chippewa Indians v. McKesson Corp. et al.*, No. 3:18-cv-00380 (W.D. Wisc.); *Fond du Lac Band of Lake Superior Chippewa v. McKesson Corp. et al.*, No. 0:18-cv-02713 (D. Minn.); *Robinson Rancheria v. McKesson Corp. et al.*, No. 3:18-cv-02525 (N.D. Cal.); *Hopland Band of Pomo Indians, v. McKesson Corp. et al.*, No. 3:18-cv-02528 (N.D. Cal.); *Scotts Valley Band of Pomo Indians v. McKesson Corp. et al.*, No. 3:18-cv-02529 (N.D. Cal.); *Round Valley Indian Tribes v. McKesson Corp. et al.*, No. 3:18-cv-02530 (N.D. Cal.); *Redwood Valley Or Little River Band Of Pomo Indians of the Redwood Valley Rancheria v. McKesson Corp. et al.*, No. 3:18-cv-02531 (N.D. Cal.); *Guidiville Rancheria of California v. McKesson Corp. et al.*, No. 3:18-cv-02532 (N.D. Cal.); *Coyote Valley Band of Pomo Indians v. McKesson Corp. et al.*, No. 3:18-cv-02533 (N.D. Cal.); *Consolidated Tribal Health Project Inc. v. McKesson Corp. et al.*, 3:18-cv-02534 (N.D. Cal.); *Center Point, Inc. v. McKesson Corp. et al.*, No. 3:18-cv-02535 (N.D. Cal.); *Big Valley Band of Pomo Indians of the Big Valley Rancheria v. McKesson Corp. et al.*, No. 3:18-cv-02536-VC (N.D. Cal.); *Big Sandy Rancheria of Western Mono Indians v. McKesson Corp. et al.*, No. 3:18-cv-02537 (N.D. Cal.); *Tucson Medical Center v. Purdue Pharma L.P. et al.*, No. 4:18-cv-00481 (D. Ariz.); *City of Tucson v. Purdue Pharma L.P.*

12.     On September 4, 2018, Judge Polster issued the first opinion on the merits of McKesson's federal officer removal grounds, in a pair of cases brought by Native American tribes alleging claims closely comparable to those at issue here. *In re Nat'l Prescription Opiate Litig.*, 327 F. Supp. 3d 1064 (N.D. Ohio 2018). In his opinion, Judge Polster *agreed* with McKesson that cases in which plaintiffs' allegations implicated McKesson's PPV distributions belong in federal court under 28 U.S.C. § 1442(a)(1), and denied the tribes' motions to remand.

13.     One of the two Native American tribe cases that Judge Polster ruled must remain in federal court was brought by an Oklahoma tribe, and was originally filed in Oklahoma state court. *See Cherokee Nation v. McKesson Corp.*, No. 6:18-cv-00056 (E.D. Okla.). Judge Polster recently recommended that the *Cherokee Nation* action be transferred back to federal district court in Oklahoma. *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804 (N.D. Ohio Nov. 19, 2019), ECF No. 2941 (attached as **Exhibit 1**). This case, which makes allegations substantially similar to those made by Cherokee Nation, raises many of the same substantive legal issues as that case, and implicates federal jurisdiction in the same way as that case, should also proceed in federal district court.

**B.**     **McKesson Acted Under Color of Federal Office.**

14.     The federal officer removal statute applies to private parties "'who lawfully assist' [a] federal officer 'in the performance of his official duty.'" *Watson v. Philip Morris*

---

*et al.*, No. 4:19-cv-00167 (D. Ariz.); *Pima County v. Purdue Pharma L.P. et al.*, No. 4:19-cv-00166 (D. Ariz.); *City of Prescott v. Allergan PLC et al.*, No. 3:19-cv-08165 (D. Ariz.); *City of Portsmouth v. Purdue Pharma et al.*, No. 2:19-cv-00331 (E.D. Va.); *Cty. of Angelina v. Purdue Pharma* L.P., *et al.*, No. 4:19-cv-03590 (S.D. Tex.).

*Cos., Inc.*, 551 U.S. 142, 151 (2007) (citing *Davis v. South Carolina*, 107 U.S. 597, 600 (1883)). It is well-established that government contractors who are involved in "an effort to assist, or help carry out, the duties or tasks of the federal superior" are "acting under" a federal officer. *Id*. at 152 (emphasis and quotations omitted).

15.     Because the State seeks recovery for harm allegedly caused by any and all diverted prescription opioids in Oklahoma, without regard to the source, *see* Pet. ¶¶ 83-85, 92, its claims necessarily implicate prescription opioids that McKesson supplied to federal facilities pursuant to its responsibilities as a government contractor.

16.     In particular, McKesson, through an exclusive contract with the United States government, is the primary distributor of prescription medications to Veterans Affairs, Indian Health Services, Bureau of Prisons, and other federal facilities. It has supplied and continues to supply prescription medications, including prescription opioids, to such federal facilities in Oklahoma. Pursuant to the PPV Contract, McKesson has an obligation to supply prescription medications to those facilities upon the federal government's request. In the State of Oklahoma, distributions to federal customers under the PPV Contract represent a substantial proportion of McKesson's overall shipments of prescription opioids.

17.     The PPV Contract is governed by federal law and regulation, and is overseen by a federal contracting officer. Under the terms of the PPV Contract, McKesson *must* process and fill all orders that it receives from authorized government purchasers. PPV Contract § I-9(b). The PPV Contract requires prompt, typically next-day, delivery of all orders. *Id*. I-9(l). And the PPV Contract does *not* grant McKesson discretion to deny any

federal orders placed under the contract. *Id*. § AS3023 (Sept. 2010) (stating that McKesson "may not unreasonably delay filling an FSS [Federal Supply Schedule] order"). Instead, McKesson must coordinate shipment decisions through the federal contracting officer assigned to administer the contract, who retains close day-to-day supervision over McKesson's fulfillment of federal orders.

18.     Judge Polster ruled that this first element of the federal officer removal statute is satisfied by the PPV Contract, because "the assistance McKesson provides to [Veterans Affairs under the PPV Contract] goes beyond simple compliance and helps the government perform basic tasks." *Nat'l Prescription Opiate Litig.*, 327 F. Supp. 3d at 1076. Furthermore, Judge Polster concluded that "McKesson inarguably has a contractual relationship with the government and has retained little, if any, freedom to decide whether to fill orders pursuant to the PPV Contract." *Id.* at 1074.

### C.     The Causal Nexus Requirement Is Satisfied.

19.     To establish a "causal connection" between the State's claims and McKesson's federally required conduct, McKesson need only show "a connection or association" between the claims and the conduct. *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 258 (4th Cir. 2017) (quotation marks omitted); *Zeringue v. Crane Co.*, 846 F.3d 785, 793 (5th Cir. 2017) (noting that "the plain import of the phrase 'relating to' is that *some* attenuation is permissible, attenuation which is irreconcilable with [a] proposed requirement of precise federal direction").

20.     There is a causal nexus between the State's claims and McKesson's acts under the federal PPV contract. The State alleges that the Defendants' "massive and

unreasonable distribution of opioids and the resulting opioid abuse and addiction epidemic caused the State of Oklahoma, its businesses, communities and citizens to bear enormous social and economic costs including increased health care, criminal justice, and lost work productivity expenses, among others." Pet. ¶ 124; *see also id.* ¶ 99 ("It was reasonably foreseeable to Defendants that their failure to prevent oversupply and diversion would cause injuries, including addiction, overdoses, and death.").

21.    The State's claims thus put at issue *all* prescription opioids allegedly distributed into and within Oklahoma. Those distributions necessarily include a large volume of prescription opioids McKesson supplied to Veterans Affairs, Indian Health Services, Bureau of Prisons, and other federal facilities, the delivery of which was controlled by the terms of the PPV Contract, and overseen by a federal officer. As Judge Polster concluded based on similar allegations in the *Cherokee Nation* case, McKesson has therefore satisfied the causal nexus requirement. *See Nat'l Prescription Opiate Litig.*, 327 F. Supp. 3d at 1077 ("[T]he Tribes' claims put *all* prescription opioids at issue and allege that diversion can occur at *any* point in the supply chain, including those opioids supplied pursuant to the PPV contract. The issue here is whether McKesson's drug distribution was performed pursuant to a federal contract, and in this case it was.").

### D.    McKesson Has Colorable Federal Defenses.

22.    In construing the colorable federal defense requirement, the Supreme Court has "rejected a 'narrow, grudging interpretation' of the statute," and "do[es] not require the officer virtually to 'win his case before he can have it removed.'" *Jefferson Cty. v. Acker*, 527 U.S. 423, 431 (quoting *Willingham v. Morgan*, 395 U.S. 402, 407 (1969)).

23.     McKesson has a colorable federal defense to the State's claims under the government contractor defense, which "protects government contractors from tort liability that arises as a result of the contractor's 'compli[ance] with the specifications of a federal government contract.'" *Getz v. Boeing Co.*, 654 F.3d 852, 860 (9th Cir. 2011) (quoting *In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1000 (9th Cir. 2008)). *See also Boyle v. United Techs. Corp.*, 487 U.S. 500 (1988). In denying remand in the *Cherokee Nation* case, Judge Polster ruled that "McKesson's distributions to the federal government pursuant to the PPV Contract are sufficient to demonstrate that the government contractor defense is plausible," and therefore this defense is "sufficient to meet the third prong of the federal officer removal analysis." *Nat'l Prescription Opiate Litig.*, 327 F. Supp. 3d at 1078.

24.     McKesson also has a colorable federal preemption defense because the State's claims conflict with the federal Controlled Substances Act and its implementing regulations. For example, the State's claims based on the Oklahoma Controlled Substances Act are preempted because imposing liability on the basis of those state law claims would frustrate the purpose of Congress, the federal Controlled Substances Act, and its regulations. Congress authorized the Drug Enforcement Administration to regulate registrants, taking into account a variety of considerations, and vested the federal agency with specific enforcement tools, and that framework would be frustrated by imposition of inconsistent state law liability. Those State claims also are preempted because imposing liability on the basis of those state law claims would stand as an obstacle to the effective operation of the federal Controlled Substances Act and implementing regulations, including when distributors could not comply with both state and federal law.

### III.     ALL PROCEDURAL REQUIREMENTS OF REMOVAL ARE SATISFIED.

25.     McKesson was served with the Petition on January 14, 2020. In accordance with 28 U.S.C. § 1446(b), this Notice of Removal is timely filed within 30 days of effective service of the Petition on McKesson. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347–48 (1999) (holding that the 30-day removal period begins to run upon formal service of the complaint).

26.     Pursuant to 28 U.S.C. § 1446(a), copies of the state court docket sheet and all documents filed or served upon McKesson in the state court action are attached as **Exhibits 2-6**.

27.     Written notice of the filing of this Notice of Removal shall be promptly served on all parties herein, and a copy of this Notice shall promptly be filed with the Clerk of the District Court of Cleveland County, State of Oklahoma pursuant to 28 U.S.C. § 1446(d).

28.     Federal officer removal does not require all defendants to consent to or join in the removal, and allows the removal of the entire action. *Humphries v. Elliott Co.*, 760 F.3d 414, 417 (5th Cir. 2014) ("Removal under § 1442(a), unlike removal under § 1441, does not require the consent of co-defendants."); *Akin v. Ashland Chemical Co.*, 156 F.3d 1030, 1034 (10th Cir. 1998) (removal under § 1442 "allows a federal officer [or person acting under that officer] independently to remove a case to federal court even though that officer [or person acting under that officer] is only one of several named defendants").

29.     In filing this Notice, McKesson expressly reserves all defenses, including but not limited to those under Federal Rules of Civil Procedure 8(c) and 12(b).

30.     WHEREFORE, McKesson gives notice that the above action now pending against it in the District Court of Cleveland County, State of Oklahoma, Case No. CJ-2020-39 TB, is hereby removed from the above-referenced State Court to the United States District Court for the Western District of Oklahoma.

January 31, 2020

*/s/ Stuart D. Campbell*
Stuart D. Campbell, OBA #11246
Kaylee Davis-Maddy, OBA #31534
Lewis N. Carter, OBA #1524
DOERNER, SAUNDERS, DANIEL
& ANDERSON, L.L.P.
700 Williams Center Tower II
Two West Second Street
Tulsa, Oklahoma 74103-3522
Telephone 918-582-1211
Facsimile 918-591-5360
scampbell@dsda.com
kmaddy@dsda.com

*Counsel for McKesson Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that the following parties are being served with a copy of this document on January 31, 2020,  in accordance with the Federal Rules via CM/ECF, via email, or via mail, postage pre-paid:

Mike Hunter
Attorney General for
  the State of Oklahoma
Abby Dillsaver
General Counsel to
  the Attorney General
Ethan A. Shaner
Deputy General Counsel
313 N.E. 21st Street
Oklahoma City, OK 73105

Michael Burrage
Reggie Whitten
Randa Reeves
WHITTEN BURRAGE
512 N. Broadway Avenue, Suite 300
Oklahoma City, OK 73102

Bradley E. Beckworth
Jeffrey J. Angelovich
Lisa Baldwin
Trey Duck
Drew Pate, *pro hac vice*
Brooke A. Churchman
Nathan B. Hall
Ross Leonoudakis, *pro hac vice*
Robert Winn Cutler, *pro hac vice*
NIX, PATTERSON, LLP
512 N. Broadway Avenue, Suite 200
Oklahoma City, OK 73102

Ryan A. Ray
NORMAN WOHLGEMUTH
CHANDLER JETER BARNETT & RAY,
P.C.
2900 Mid-Continent Tower
401 South Boston Avenue
Tulsa, Oklahoma 74103

D. Michael McBride III
Susan E. Huntsman
CROWE & DUNLEVY
A Professional Corporation
500 Kennedy Building
321 S. Boston Ave.
Tulsa, OK 74103-3313

*/s/Stuart D. Campbell*
Stuart D. Campbell

5225296.1